# Mandel v. The Swan Land & Cattle Company.

1. PENALTIES—*Suit to Enforce—What is Not.*—A suit brought by a corporation to recover the amount of a call made by the directors upon shares of stock where the shares have been forfeited for the non-payment of the call upon which the suit is based, is not an attempt to enforce a penalty.

2. STOCKHOLDERS—*Presumed to Have Knowledge of the Company's By-laws.*—Stockholders are presumed to know the provisions of the charter and by-laws of the companies in which they are members.

3. BY-LAWS—*Result of Unreasonable Provisions.*—If the by-laws of an incorporated company are so unjust and unreasonable that courts will not enforce them, a forfeiture of a member's shares may be held to have been unwarranted and be set aside, but it will not be a defense to a suit brought by the company to collect assessments due upon the forfeited shares of stock of such member. Setting aside a forfeiture of his stock does not have the effect of paying his assessments.

4. STOCKHOLDERS—*Effect of Unwarranted Proceedings for Forfeiture.*—If the proceedings taken under its by-laws by an incorporated company are unwarranted or inadequate, such proceedings do not affect a holder's title to his stock, but if such proceedings are regular and warranted, the company becomes the absolute owner of the stock.

5. STOCKHOLDERS—*Status After a Forfeiture of His Stock.*—A stockholder whose shares have been forfeited under the by-laws of the company remains, notwithstanding such forfeiture, liable to pay all calls due at the time of forfeiture, under by-laws with provisions creating such a liability.

6. STOCKHOLDERS—*Buying Shares—Contracts with Reference to By-laws.*—A person in purchasing shares in an incorporated company contracts with reference to its charter and by-laws and the laws of the country in which such company is created.

7. CORPORATION—*Power to Contract for Interest—Foreign Corporation Same.*—A corporation doing business in this State can not contract to receive more than seven per cent interest, but a corporation of another State may, in that State, make a valid contract for interest at any rate permissible by the laws of that State, and may in this State bring suit and recover judgment according to the law of the State where its contract was made.

8. CONTRACTS—*Validity—Law of the Place—Remedy.*—The validity of a contract is determined by the *lex loci contractus.* The relief afforded for a breach of contract is in accordance with the law of the forum where suit for breach is brought.

9. CORPORATIONS—*Assessments upon Stock.*—The rule that assessments can not be made until the entire stock has been subscribed, has no reference to cases in which the corporation is authorized to begin and carry

on its contemplated business before its stock has all been taken. Where a company is to come into existence only upon the full amount of its stock being subscribed, it can not make and enforce payment of calls before it has passed its embryotic condition.

10. EVIDENCE—*Records of Corporations.*—Copies of the books, records, etc., of an incorporated company, examined and sworn to by a credible witness, are admissible in evidence to show that a call upon the stock has been made.

**Memorandum.**—Assumpsit.  Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.  Heard in this court at the October term, 1893, and affirmed.  Opinion filed January 11, 1894.

### STATEMENT OF THE CASE.

This is a suit in assumpsit, brought in the Circuit Court of Cook County, on the 24th day of March, 1890, by the Swan Land and Cattle Company, limited, a corporation organized under the English "Companies' Act," against Emanuel Mandel, to recover the amount of a call made by the directors of the company upon shares of stock standing in the name of the appellant, which shares the company had already forfeited for non-payment of the same call upon which the suit is based.

There was a trial by the court, a jury being waived, and a judgment in favor of the appellee for the amount of the call and interest, from which an appeal has been prosecuted to this court. The declaration alleges, in substance, that the appellee was a corporation duly organized under the "Companies' Act" of Great Britain, and that the appellant owned 380 shares of its stock of the par value of £10 per share, on which only £6 per share had been paid in, and that on the 11th day of October, 1887, a call was made of £1, 2s. per share by the directors of the company.

The declaration further alleged that the articles of association of the company provided for forfeiture of stock, in case calls thereon were not paid, and that notwithstanding such forfeiture, the shareholders should remain liable for the amount of any call due thereon at the time of such forfeiture, together with expenses and interest thereon; that after

demand for payment of such call on the stock of the appellant, and on the 4th day of September, 1888, his shares were duly forfeited by resolution of the board of directors for non-payment; and it is claimed that the appellant, not having paid such call, is still liable for the full amount thereon, with interest, notwithstanding the forfeiture of his shares for its non-payment.

The appellant interposed pleas of *nul tiel corporation* and the general issue.

The printed statute of Great Britain, comprising what is generally known as the English "Companies' Act" of 1862, with its amendments, was offered in evidence. This statute in substance provides that seven or more persons, by subscribing their names to a memorandum of association, and otherwise complying with the statute in respect of registration, may form an incorporated company, with or without limited liability. The act contains the usual provisions prescribing the powers and duties of corporations, the manner in which they can be created, their business conducted, and how their affairs may be wound up and put into liquidation in case of insolvency.

Section 16 of said act is as follows:

"The articles of association shall be printed, they shall bear the same stamp as if they were contained in a deed, and shall be signed by each subscriber, in the presence of, and be attested by, one witness at the least, and such attestation shall be a sufficient attestation in Scotland as well as in England and Ireland; when registered, they shall bind the company and the members thereof to the same extent as if each member had subscribed his name and affixed his seal thereto, and there were in such articles contained a covenant on the part of himself, his heirs, executors and administrators, to conform to all the regulations contained in such articles, subject to the provisions of this act; and all moneys payable by any member to the company, in pursuance of the conditions and regulations of the company, or any of such conditions or regulations, shall be deemed to be a debt due from such member to the company, and in

England and Ireland, to be in the nature of a specialty debt."

Section 39 of the articles of association or by-laws is as follows:

"Any member whose shares have been forfeited, shall, notwithstanding, be liable to pay, and shall forthwith pay to the company, all calls, installments, interest and expenses owing upon or in respect of such shares, at the time of the forfeiture, together with interest thereon from the time of forfeiture until payment, at the rate of five per cent per annum, and the directors may enforce the payment thereof if they think fit."

Appellant took an assignment of 304 shares, sending the deed of assignment to the company. Afterward, upon a second issue, seventy-six additional shares were issued by the company to him; he also received three dividends, two of which were upon his entire 380 shares.

The par value of each share was £10. Upon the shares owned by appellee, £6 only had been paid. The directors, in accordance with powers given to them by the articles of association, on October 21, 1887, made a call of £1, 2s., upon each share, which, upon appellant's shares, amounted to £418. Notice of this call was mailed to appellant, and he having failed to make payment, his stock was declared forfeited to the company.

This action is brought to recover the call of £1, 2s. per share, for non-payment of which said forfeiture was declared, being based upon section 39, above quoted.

Otis & Graves, attorneys for appellant.

Swift, Campbell, Jones & Martin, attorneys for appellees.

Mr. Justice Waterman delivered the opinion of the Court.

It is strenuously urged that section 39 of the articles of association is so unreasonable and unjust, that the courts

will not enforce it; that this suit is an attempt to enforce a penalty created by the laws of another sovereignty, and that this is never done; and it is also insisted that appellant was entitled to know what had been done with his forfeited shares, and to be credited with whatever the company had received therefor.

We see nothing unreasonable or unjust in the provisions of section 39, nor do we regard this suit as an attempt to enforce a penalty. Stockholders are presumed to know the provisions of the charter and by-laws of the companies in which they are members. Morawetz on Corporations, Sec. 591.

By becoming a holder of stock having a par value of £10 upon which only £6 had been paid, appellant obligated himself to pay when duly called upon £4 upon each of his shares; so soon as he was thus duly called upon to pay any portion of the unpaid £4 the amount of such call became a debt.

It is for this debt that the present suit was brought.

The defense to it is based entirely upon certain of the articles of association, and what has been done thereunder. If they are so unjust and unreasonable that courts will not enforce them, the forfeiture of appellant's shares may be held to have been unwarranted and be set aside, but a defense to this suit will not therefrom arise; the debt of appellant will not thus be paid.

This suit is brought to collect a debt, not to enforce a penalty; the penalty provided by the articles of association was the forfeiture of shares; with whether such forfeiture was legal or illegal, warranted or unwarranted, binding upon appellant, or a thing which affected him not, we have in this litigation nothing to do, and as to such declaration of forfeiture, the judgment in this case will establish nothing.

Whether appellee has sold or still retains the forfeited shares, is in this action immaterial. Save and by virtue of certain provisions of its articles, it could not forfeit at all; if they are incapable of enforcement, or if the proceedings

for forfeiture, taken thereunder, were unwarranted or inadequate, then appellant is yet the owner of the 380 shares, and any sale the company may have made of them is not binding upon him; if the forfeiture was in all respects regular and warranted, then the company became thereby the absolute owner of these shares and need not account for the proceeds thereof. The numerous cases cited by appellant to the effect that the amount of a call, for the non-payment of which stock has been forfeited, can not be collected, are all in respect to companies whose by-laws contained no provision like section 39.

But for that section it might well be held that the company having elected under its powers to forfeit shares, could not recover the amount of the call, for the non-payment of which the forfeiture was made; while in the present instance the right to recover such call, notwithstanding forfeiture, is plain; to this appellant agreed; all stockholders stood as to this, upon an equality, and we see no reason why appellant should be allowed to get rid of his unmistakable agreement.

That the stockholder remains, notwithstanding forfeitures, liable to pay all calls due at the time of forfeiture, is, under provisions like section 39, held in England, and as we think with good reason. Dawes case, 38 Law Journal, N. S. 512.

Appellant, in purchasing these shares, contracted with reference to the charter and by-laws of the corporation of which he became a member, and the laws of the country in which such company was created. Beach on Corporations, Sec. 148; Morawetz on Corporations, Secs. 874 and 875; First National bank of Deadwood v. Gustin Minerva Con. Mining Co., 42 Minnesota 327.

We do not regard section 26 of chapter 32, entitled Corporations, of the statutes of this State, as having any bearing upon this case. Appellee did not undertake to do business in this State, and it is now merely attempting to enforce the payment of a debt created in and in accordance with the laws of another sovereignty.

A corporation doing business in this State can not contract to receive more than seven per cent interest, but a corporation of another State, may in that State, make a valid contract for interest at any rate permissible with the laws of that State, and may in this State bring suit and recover judgment according to the law of the State where its contract was made. The validity of contracts is determined by the *lex loci contracti*. The relief afforded for a breach of contract is in accordance with the law of the forum where suit for breach is brought.

The authorities cited by appellant, to the effect that calls can not be made until the entire stock has been subscribed, have no reference to cases in which the corporation, as in this case, is authorized to begin and carry on its contemplated business before the stock has all been taken. Where a company, for the purposes of its being, is to come into existence only upon the full amount of its stock being subscribed, it is manifest that it could not make and enforce payment of calls ere it had passed its embryonic condition. Such is not the condition of appellee. Buckley on Companies' Acts, 4th Ed. 19; Ornamental Pyrographic Co. v. Brown, 2 Hurl. & Colt. 63.

It is urged by appellant that it was incumbent on appellee to have its books actually present in court if it desired to show their contents; that it was not sufficient to, as was done, take by deposition the testimony of the secretary of the company and the custodian of its records at its office, the books being there produced, proven, and the entries desired to be introduced then and there copied and verified by the witness.

The entries, copies of which were introduced in evidence, were such as the company was by law required to keep; they were made when appellant was a stockholder, and therefore by his agents, and the copies were examined and sworn to by credible witnesses. See statutes of this State, Secs. 13 to 18, of chapter entitled Evidence; Greenl. on Ev., Vol. 1, Sec. 493, 13th Ed. see also Scarlett v. The Academy of Music, 43 Md. 203.

The making of the call for which suit was brought was proven by the testimony of witnesses as well as by copies of entries in the books of the company.

The making of a call is a fact which it is not indispensable should be proved by an introduction of or transcripts from the books of the company.  Hays & Black v. Pittsburgh & Steubenville R. R. Co., 38 Penn. St. 81–90; Reynolds et al. v. Schweenfus, 27 Ohio St. 311, 321, 324; Ratcliff v. Teters, 27 Ohio St. 66; Tatmouth v. Koehler, 33 Mich. 22; Bank of the United States v. Dandridge, 12 Wheat. 64.

The opinion in this case being applicable to Frank v. Swan Land & Cattle Co., and Friend v. Swan Land & Cattle Co., at this term, the jugdment in each of said causes is affirmed.

MR. JUSTICE GARY.

If the question were now whether there was any good cause for suppressing any part of the depositions I should say that there was, but a motion made upon specific grounds is to be sustained or denied upon those.

The principal objection made to the depositions was that no secondary evidence of the contents of the corporation books was admissible, but the books themselves must be put in evidence on the trial.  The 15th and 18th sections of chapter 51, Evidence and Depositions, permit copies to be used either certified or sworn, and whether the contents of the depositions were partly testimony of the witnesses as to corporate acts which should be proved by the books, or competent copies, is a question not necessary to consider.